## UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**MARION HADDAD,**                                    Chapter 7
     Debtor                              Case No. 10-19145-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**FATHER JOSEPH RANDALL, and**
**ST. NECTARIOS MONASTERY,**
     Plaintiffs
v                                                      Adv. P. No. 11-1128
**MARION HADDAD, THE HOLY**
**ANNUNCIATION MONASTERY CHURCH**
**OF THE GOLDEN HILLS, THE ATTORNEY**
**GENERAL OF MASSACHUSETTS,**
**MASSACHUSETTS STATE RETIREMENT**
**BOARD, TRUSTEE**
     Defendants

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

## I. INTRODUCTION

The matters before the Court are 1) the "Defendants Attorney General of

Massachusetts and Massachusetts State Retirement Board's Motion to Dismiss," and 2) the

Motion to Dismiss filed by Marion Haddad (the "Debtor or the "Defendant").  The

Attorney General and the Massachusetts State Retirement Board (individually, the

"Attorney General" and the "Retirement Board" and, jointly, the "Commonwealth

Defendants") and the Debtor seek dismissal of the "Adversary Complaint for Declaratory

1

Judgment" filed by Father Joseph Randall and St. Nectarios Monastery (the "Plaintiffs") against the Commonwealth Defendants, the Debtor, and The Holy Annunciation Monastery Church of the Golden Hills (the "Annunciation Monastery"). The Plaintiffs oppose the Motions. The Commonwealth Defendants base their motion to dismiss, in part, on the mandatory and discretionary abstention provisions of Title 28 of the United States Code. *See* 28 U.S.C. § 1334 (c)(1) and (c)(2).

The Court heard the Motions to Dismiss on August 10, 2011 and took the matters under advisement. At the hearing, none of the parties requested an evidentiary hearing. Additionally, none of the parties contested the material facts established by the attachments to the Plaintiffs' Complaint and the attachments to the Commonwealth Defendants' Motion to Dismiss. Accordingly, the Court shall treat the Motions to Dismiss as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b).

The issues presented include 1) whether ownership of  monies obtained by the Debtor from the sale of real property owned by the Annunciation Monastery are property of the bankruptcy estate; 2) whether this Court has jurisdiction to consider the prayers for relief set forth in the Plaintiffs' Complaint, which include a declaratory judgment as to the rightful owner of the funds and an order requiring the Retirement Board to turnover the funds to the Annunciation Monastery, where the Debtor has received a discharge under 11  U.S.C. § 727 and where the Chapter 7 Trustee has not intervened in the adversary proceeding as a party plaintiff and has filed a Report of No Distribution; and 3) whether,

2

if the Court has jurisdiction, it should abstain from ruling on the motions to dismiss. A predicate to the Court's determination of the last two issues is whether the Debtor's interest in retirement funds, which she obtained from the sale of real property owned by the Annunciation Monastery and which now are held by the Retirement Board, is property of the bankruptcy estate. *See* 11 U.S.C. § 541(a).

## II. BACKGROUND[1]

The Debtor filed a voluntary Chapter 7 petition on August 24, 2011. On September 1, 2011, she filed Schedules A through J. On Schedule C-Property Claimed as Exempt, she claimed an exemption in a Massachusetts Retirement Fund in the sum of $55,000 pursuant to 11 U.S.C. § 522(d)(12).[2] She attached to her Schedules a letter from the State Board of Retirement which provided, in pertinent part, the following:

> Please be advised the records of this office show your overall total in the state Employees' Retirement System is $48,761.84 consisting of $8,133.76 in pre-tax deposit, $40,000 in after tax deposits and $628.02 in pre-tax interest.

The Chapter 7 Trustee conducted the section 341(a) meeting of creditors at its originally scheduled time of September 28, 2010 and continued the meeting to November 2, 2010. The Plaintiffs did not timely file a complaint under 11 U.S.C. § 523(c) or § 727(a) within 60 days of the first scheduled meeting of creditors. *See* Fed. R. Bankr. P. 4004(b) and

---

[1] The Court takes judicial notice of the Debtor's Schedules and the docket in the Debtor's Chapter 7 case.

[2] The Debtor elected the federal exemptions. Section 522(d)(12) provides a federal exemption for "[r]etirement funds to the extent that those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 522(d)(12).

Fed. R. Bankr. 4007(c). Following the initial meeting, the Debtor filed a "Statistical

Summary of Certain Liabilities and Related Data (28 U.S.C. § 159)," in which she indicated

that her debts were not primarily consumer debts, and her Chapter 7 Individual Debtor's

Statement of Intention, which contained no information other than a date and was

unsigned. The Trustee conducted a further meeting of creditors on November 2, 2011. The

Plaintiffs timely filed an Objection to the Debtor's claimed exemption. *See* Fed. R. Bankr.

P. 4003(b)(1). The Court conducted a hearing with respect to the Plaintiffs' Objection and

continued it generally. Accordingly, the Court has made no determination as to whether

the funds which the Debtor has claimed as exempt are property of the estate which can

then be exempted from property of the estate pursuant to 11 U.S.C. § 522(d)(12).

On December 1, 2010, the Court granted the Debtor a discharge pursuant to 11

U.S.C. § 727(a). The Chapter 7 Trustee filed a Report of No Distribution on January 24,

2011. The Debtor listed both Father Joseph Randall and St. Nectarios Monastery on

Schedule F-Creditors Holding Unsecured Nonpriority Claims as the holders of a disputed

claim in the sum of $40,000. She did not list the Annunciation Monastery as a creditor in

her Schedules.

## III. THE ADVERSARY PROCEEDING

The Plaintiffs filed a Complaint against the Debtor, the Commonwealth Defendants

and the Annunciation Monastery on April 18, 2011, seeking a determination that $40,000

in proceeds from the sale of real property located at 211 Bay State Road, Melrose,

Massachusetts (the "Property"), formerly owned by the Annunciation Monastery, and

4

currently held by the Massachusetts State Retirement Board, is the property of the

Annunciation Monastery and not the property of the Debtor's bankruptcy estate, as well

as an order requiring the Retirement Board to "return the $40,000 deposited by the Debtor

into her State Retirement Board account to the Holy Annunciation corporation" and an

order requiring the $40,000 to be "held in escrow by the corporation pending execution of

the Superior Court judgment by the Plaintiffs."[3] The Plaintiffs and the Commonwealth

Defendants attached numerous documents to their filings with the Court with respect to

two complaints, one filed by the Plaintiffs in April of 2004 in the Middlesex Superior Court

to resolve a dispute as to the ownership of the Property, and the other filed in the Suffolk

Superior Court, captioned a "Complaint to Set Aside Fraudulent Conveyance and for

Trustee Process." The documents included the following:

> An "Order for Impoundment/Escrow," dated March 2, 2006, entered by
> Sandra L. Hardin, Justice of the Superior Court, Department of the Trial
> Court, Middlesex Division, in which the court ruled as follows:
>
>> That all proceeds from the sale of the Monastery building at
>> 211 Bay State Road in Melrose, Mass., under the direct or
>> indirect custody or control of the defendants or their agents,
>> shall be held in escrow by the defendants, pending a hearing
>> and further order of the Court;

---

[3] The Plaintiffs allege that Father Joseph Randall was a resident monk at the
Annunciation Monastery, which was organized as a non-profit religious corporation,
and was a director of that corporation since 1983. He allegedly was also made president
of the corporation in 1994. The allegations in the complaint are inconsistent as to
whether he remained a director through 2002. The Plaintiffs also allege that the Debtor,
in January of 2004, wrongfully filed a Certificate of Change of Directors or Officers of a
Non-Profit Corporation in which she listed herself as President, Clerk, Treasurer, and
sole director of the Annunciation Monastery corporation.

A Sovereign Bank Check, dated March 3, 2006, in the sum of $40,000 made payable to the Massachusetts State Board of Retirement;

A Complaint to Set Aside Fraudulent Conveyance and for Trustee Process filed by the Plaintiffs in the Suffolk Superior Court, against the Commonwealth Defendants the Debtor, the Annunciation Monastery, and Richard Capana[4] on November 19, 2008;

A Final Judgment, dated August 6, 2008, entered by Thayer Fremont-Smith, Justice of the Superior Court, Department of the Trial Court, Middlesex Division, in favor of the Plaintiffs and against the Debtor and the Annunciation Monastery in the sum of $105,000 plus interest and costs.

The Memorandum of Decision and Order entered on June 10, 2009 by Regina L. Quinlan, Associate Justice of the Suffolk Superior Court, granting the Commonwealth's Motion to Dismiss the Fraudulent Conveyance Complaint;[5]

An order, dated August 19, 2010, with respect to the Plaintiffs' Motion for Summary Judgment, pursuant to which Thomas E. Connolly, Justice of the Suffolk Superior Court, Department of the Trial Court, 1) found that "Ms. Haddad, in her position as sole officer and director of the Holy Annunciation Monastery Church of the Golden Hills, withdrew $98,771.00 from the Holy Annunciation corporate account, and did not place it into an escrow account as ordered by the court," 2) ordered the Massachusetts State Retirement Board "to disgorge funds in the amount of $40,000, which were tendered to it by the Defendant Marian [sic] Haddad on March 3, 2006;" 3) ordered the funds to be paid to the Clerk pursuant to Superior Court Rule 22; and 4) ordered the Clerk, upon receipt of the funds, to tender the funds to the Plaintiffs through their attorney of record;

The Plaintiffs' appeal from the order dismissing the Commonwealth as a defendant in the Fraudulent Conveyance action pending in the Appeals Court.

---

[4] The Plaintiffs alleged that Robert Capana was the recipient of funds allegedly fraudulently transferred to him by the Debtor.

[5] The judgment was amended on November 13, 2009 to reflect that the Complaint was dismissed as to the Attorney General, the Massachusetts Division of Public Charities, and the Massachusetts State Retirement Board.

## IV. DISCUSSION

### A. <u>Summary Judgment Standard</u>

Pursuant to Fed. R. Civ. P. 12(d), made applicable to this proceeding by Fed. R. Bankr. P. 7012, "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[6]  In <u>Hammond v. JPMC Specialty Mortg. LLC</u>, No. 10-11121-DPW, 2011 WL 1463632 (D. Mass. April 15, 2011), the court articulated the summary judgment standard in the context of a challenge to the validity of a foreclosure sale.  The court stated:

> A movant is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. Rule Civ. P. 56(a). If the moving party meets this burden, "the opposing party can then defeat the motion by showing that there is a genuine issue of material fact." <u>Rivera–Colon v. Mills</u>, __ F.3d __, 2011 WL 504049, at *2 (1st Cir. Feb.15, 2011). An issue is genuine "if 'a reasonable jury could resolve the point in favor of the nonmoving party.'" <u>Tropigas de P.R., Inc. v. Certain Underwriters at Lloyd's of London</u>, __ F.3d __, 2011 WL 834072, at *2 (1st Cir. Mar.11, 2011) (quoting <u>McCarthy v. Nw. Airlines, Inc.</u>, 56 F.3d 313, 315 (1st Cir.1995)). A fact is material if "its existence or nonexistence has the potential to change the outcome of the suit." <u>Borges ex rel. S.M.B.W. v. Serrano–Isern</u>, 605 F.3d 1, 5 (1st Cir.2010).

2011 WL 1463632 at * 3.  Based upon the submissions of the parties, the Court, as noted above, shall treat the Commonwealth Defendants' Motion to Dismiss as a Motion for Summary Judgment.

---

[6] Federal Rule of Civil Procedure 56 was amended effective December 1, 2010. The substantive standard for summary judgment, however, remained unchanged. *See* <u>Tropigas de P.R. v. Certain Underwriters at Lloyd's of London</u>, __F.3d __, 2011 WL 834072, at *2 n. 5 (1st Cir. Mar.11, 2011).

By its terms, the order entered by the Middlesex Superior Court on March 2, 2006 was intended to divest control of the proceeds from the sale of the Property.  In <u>In re Pina</u>, 363 B.R. 314 (Bankr. D. Mass. 2007), this Court  considered whether the debtor held property in a constructive trust for a creditor as a result of a state court order directing the debtor to specifically perform obligations under a Co-Tenancy Agreement.  It observed:

> The first issue for the Court's determination is whether the Debtor [Pina] held the equitable interest in the Property in a constructive trust for KAC [the debtor' co-tenant]  at the commencement of the case. In other words, at the time the Debtor filed her bankruptcy petition, had the Property been impressed with a constructive trust in favor of KAC?

> The issue arises in the context of 11 U.S.C. § 541(a) and (d) of the Bankruptcy Code. Section 541(a) defines property of the estate, with certain exceptions, as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a). "The statutory language evinces congressional intent to include a broad range of property." <u>City of Springfield v. Ostrander (In re LAN Tamers, Inc.)</u>, 329 F.3d 204, 209 (1st Cir.2003), *cert. denied*, 540 U.S. 1047, 124 S.Ct. 808, 157 L.Ed.2d 695 (2003)(citing <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 204–05, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)). Section 541(d), in contrast, excludes property in which "the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest." 11 U.S.C. § 541(d). That section "excludes property from the estate where the bankruptcy entity is only a delivery vehicle and lacks any equitable interest in the property it delivers." <u>LAN Tamers, Inc.</u>, 329 F.3d at 210.

> Property and interests in property are determined with reference to state law, in the absence of any controlling federal law. *See* <u>Barnhill v. Johnson</u>, 503 U.S. 393, 398, 112 S.Ct. 1386, 118 L.Ed.2d 39 (1992); <u>Butner v. United States</u>, 440 U.S. 48, 54–55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Section 541(d) "does not authorize bankruptcy courts to recognize a constructive trust based on a creditor's claim of entitlement to one; rather, section 541(d) only operates to the extent that state law has impressed property with a

constructive trust prior to its entry into bankruptcy." <u>Poss v. Morris (In re Morris)</u>, 260 F.3d 654, (6th Cir.2001) (citing <u>XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)</u>, 16 F.3d 1443, 1451 (6th Cir.1994)). In <u>Davis v. Cox</u>, 356 F.3d 76, 84 (1st Cir.2004), the United States Court of Appeals for the First Circuit, proceeding narrowly on the remedial theory of constructive trust, recognized the effect of a pre-petition constructive trust under § 541(d). It ruled that under Maine law, a Chapter 13 debtor, Cox, held an exempt IRA account in a constructive trust in favor of his ex-spouse, Davis, by virtue of his misconduct in violating a divorce court's injunction entered prior to bankruptcy, such that Davis's interest trumped the debtor's interest under § 541(d).

<u>In re Pina</u>, 363 B.R. at 322-23 (footnote omitted).

The First Circuit, in <u>Davis v. Cox</u>, 356 F.3d 76 (1st Cir. 2004), in the context of a divorce proceeding, also analyzed the effect of a state-court order on funds in escrow accounts. The First Circuit determined that, in addition to holding an individual retirement account subject to a constructive trust for the benefit of his spouse, an order of the probate court directing the placement of funds in escrow served to place those funds in *custodia legis*, thereby divesting the debtor of legal title to the funds. The First Circuit stated:

> The court here appointed the parties' attorneys to hold certain funds in escrow pending the division of the marital assets. The attorneys were appointed to safeguard the property to prevent Cox [the debtor] from continuing to dissipate the funds in violation of a court order. When the state court directed the attorneys to place the money in escrow accounts and to disburse the money only upon an order of the court, the funds were placed in *custodia legis* and Cox was divested of legal title of the funds and title passed to the attorneys as officers of the court.

> As a result, the funds held in *custodia legis* did not pass into the bankruptcy estate upon the filing of the bankruptcy petition. As noted by the bankruptcy court, at the commencement of the bankruptcy proceeding, Cox held just a contingent interest to the property held in *custodia legis*, subject to the divorce court's disposition of the property. Thus, only Cox's contingent interest became property of the estate.

9

<u>Davis v. Cox</u>, 356 F.3d at 93-94.  The Court of Appeals added:

> Cox contends that the escrow funds could not have been "effectively attached" as the bankruptcy court concluded because the majority of the funds were exempt from attachment under Maine law. As a result, Cox argues, the exempt property in the escrow funds passed unencumbered into the bankruptcy estate when he filed his petition. Cox's argument is flawed. While under Maine law certain property is exempt from attachment, 14 M.R.S.A. § 4422, the property at issue here was not attached.  It is true that the bankruptcy court said the property was "effectively attached" when it was placed in *custodia legis*, but it was not actually attached. The bankruptcy court was merely analogizing property held in *custodia legis* for the benefit and protection of an individual to that individual's attaching of the property in a hypothetical situation to secure a debt. But unlike a mere attachment, the court's decision to place the property in *custodia legis* divested Cox of legal title and left him with only a contingent right to the property.

<u>Id.</u>

B. <u>Analysis</u>

The Court finds that the order entered by the Superior Court on March 2, 2006 divested the Debtor from all but a mere contingent interest in the impounded funds subject to a further order of the court.  The Middlesex Superior Court's use of the term, "impoundment," in its escrow order dated March 2, 2006 is significant because it manifested the court's intent that all proceeds from the sale of the Property be unavailable to the Debtor "pending a hearing and further order of the Court." Although the order did not have the effect of imposing a constructive trust in favor of the Plaintiffs, it did have the effect of placing the proceeds in *custodia legis*.

Although this Court has been unable to find any Massachusetts cases analogous to <u>Davis v. Cox</u>,  the Massachusetts Supreme Judicial Court in in <u>Davis v. Mazzuchelli</u>, 238

Mass. 550 (1921), declared a levy of an execution was "wholly illegal and void" and property in *custodia legis* was not subject to seizure and execution where a receiver had been appointed.  It stated:

> "The possession of the receiver being considered the possession of the court, the property in his hands is looked upon as being in custodia legis, and, on that account, it is not to be taken upon any writ of attachment or execution while in his possession. In compliance with this rule it has been decided that the recovery of a judgment against partners after the appointment of a receiver for the benefit of creditors, does not create a lien upon any of the firm property or funds in his hands, and such property or funds cannot be levied upon by execution or reached by garnishment because it is already in custodia legis. So also the owner of a judgment lien upon land in the possession of a receiver cannot levy execution thereon, but must apply to the court in chancery which will protect his interests when making sale or distributing the proceeds of the land."

238 Mass. at 556 (citation omitted).  The appointment of a receiver and an order directing that funds be held escrow are analogous.  *See* In re Skorich, 337 B.R. 77, 87 (Bankr. D. N.H. 2005).

Based upon the undisputed facts in the record, the Court finds that the Debtor was divested of legal title to the funds currently held by the Retirement Board by the March 2, 2006 order of the Middlesex Superior Court and only  her contingent interest in those proceeds are property of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 541(a).

In Boston Regional Medical Center, Inc. v Reynolds (In re Boston Regional Med. Center, Inc.), 410 F.3d 100, 105 (1st Cir. 2005), the United States Court of Appeals for the First Circuit, in discussing bankruptcy court jurisdiction under 28 U.S.C. § 1334 and, in particular, its "related-to" jurisdiction, stated:

Case 11-01128   Doc 36   Filed 09/20/11   Entered 09/20/11 15:00:01   Desc Main
Document      Page 12 of 15

> The statutory grant of "related to" jurisdiction is quite broad. Congress deliberately allowed the cession of wide-ranging jurisdiction to the bankruptcy courts to enable them to deal efficiently and effectively with the entire universe of matters connected with bankruptcy estates. *See* Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984). Thus, bankruptcy courts ordinarily may exercise related to jurisdiction as long as the outcome of the litigation "potentially [could] have some effect on the bankruptcy estate, such as altering debtor's rights, liabilities, options, or freedom of action, or otherwise have an impact upon the handling and administration of the bankrupt estate." In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir.1991) (quoting In re Smith, 866 F.2d 576, 580 (3d Cir.1989)).

410 F.3d at 105.

Having concluded that the $40,000 in proceeds from the sale of the Property once belonging to the Annunciation Monastery is not part of the bankruptcy estate, the outcome of the adversary proceeding can have no conceivable impact on the Debtor's bankruptcy estate under Pacor and its progeny, where the Trustee has filed a Report of No Distribution and the Debtor has not claimed an exemption in a contingent interest.   Under those circumstances, the Court lacks jurisdiction to declare that the Annunciation Monastery is the rightful owner of the proceeds, although that ruling would appear to have been unequivocally established by Justice Connolly of the Suffolk Superior Court on August 19, 2010.  Moreover, the Court cannot order the Retirement Board to disgorge the $40,000 deposited by the Debtor to the Annunciation Monastery as the Plaintiffs request in their Complaint.[7] In the alternative, to the extent that the Court has "related-to" jurisdiction, the

---

[7] The Court observes that the issues on appeal as to whether Commonwealth Defendants may be subject to trustee process or injunctive relief conceivably could be obviated by the appointment of a special master pursuant to Mass. R. Civ. P. 70 to execute, in the Debtor's name, the documents necessary to withdraw funds from the Retirement Board that were in custodia legis  and deliver them to the rightful owner.

Court finds that mandatory abstention is warranted and results in dismissal of the

adversary proceeding.

Section 28 U.S.C. § 1334(c)(2) provides in relevant part:

> Upon timely motion of a party in a proceeding based upon a State law claim
> or State law cause of action, related to a case under title 11 but not arising
> under title 11 or arising in a case under title 11, with respect to which an
> action could not have been commenced in a court of the United States absent
> jurisdiction under this section, the district court shall abstain from hearing
> such proceeding if an action is commenced, and can be timely adjudicated,
> in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2). The court in Cambridge Place Mgmt, Inc. v. Morgan Stanley & Co.,

Inc., No. 10-11376-MNG,  2010 WL 6580503 (D. Mass. Dec. 28, 2010), set forth the standard

for mandatory abstention as follows:

> Pursuant to 28 U.S.C.A. § 1334(c)(2), a court must abstain from hearing a case
> before it if the following criteria are met: (1) a timely motion to abstain is
> filed; (2) the proceeding is based on a state law cause of action; (3) the action
> does not arise under Title 11 but is merely related to a case under Title 11; (4)
> the action could not have been commenced in federal court absent
> jurisdiction under 28 U.S.C.A. § 1334; (5) a state court action has commenced;
> and (6) can be timely adjudicated.

2010 WL 6580503 at *6 (quoting C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth., 369

B.R. 87, 92 (D.P.R.2007), and citing Goya Foods, Inc. v. Ulipiano Unanue–Casal, 164 B.R.

216, 221 (D.P.R.1993)).  All the criteria enumerated in Cambridge Place Management, Inc.

are satisfied in this case.  In view of issues arising under 11 U.S.C. § 106, *see* Central

Virginia Community College v. Katz, 546 U.S. 356, 378 (2006),[8] and the pending appeal,

---

[8] The United States Court of Appeals for the Eleventh Circuit in State of Fla.
Dept. of Rev. Diaz (n re Diaz), 647 F.3d 1073 (11th Cir. 2011), explained the Supreme
Court's decision in Katz as follows:

mandatory abstention is warranted.

---

In <u>Katz</u>, a bankruptcy trustee commenced an *in personam* proceeding against state institutions of higher education in order to avoid and recover alleged preferential transfers made by the debtor to the institutions while the debtor was insolvent. <u>Id.</u> at 360, 126 S.Ct. 990. The institutions raised state sovereign immunity as a defense. <u>Id.</u> Although the Court's answer to the question whether § 106(a) validly abrogated the institutions' immunity would have conclusively determined the viability of the "congressional abrogation" theory in bankruptcy, the Court ultimately resolved the case without reaching that question. *See* <u>id.</u> at 359, 362, 377–79, 126 S.Ct. 990. Instead, the Court recognized a new theory, which we will refer to as "consent by ratification."

The "consent by ratification" theory is predicated on the states' decision when joining the Union to ratify the Bankruptcy Clause, which empowers Congress to establish "uniform Laws on the subject of Bankruptcies throughout the United States." U.S. Const. art. I, § 8, cl. 4. The Court in <u>Katz</u> explained that "[b]ankruptcy jurisdiction, as understood today and at the time of the framing, is principally *in rem* jurisdiction." 546 U.S. at 369, 126 S.Ct. 990. Nevertheless, the Court continued, "[t]he Framers would have understood that laws 'on the subject of Bankruptcies' included laws providing, in certain limited respects, far more than simple adjudications of rights in the res." <u>Id.</u> at 370, 126 S.Ct. 990. "More generally," the Court stated, "courts adjudicating disputes concerning bankrupts' estates historically have had the power to issue ancillary orders enforcing their *in rem* adjudications." <u>Id.</u> Therefore, the Court concluded that when the states ratified the Bankruptcy Clause, they "acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the in rem jurisdiction of the bankruptcy courts." <u>Id.</u> at 378, 126 S.Ct. 990; *see also* <u>id.</u> at 373, 126 S.Ct. 990 ("Insofar as orders ancillary to the bankruptcy courts' in rem jurisdiction, like orders directing turnover of preferential transfers, implicate States' sovereign immunity from suit, the States agreed in the plan of the Convention not to assert that immunity.").

<u>Diaz</u>, 647 F.3d at 1083-84.  Because the $40,000 is not property of the estate, the Court's *in rem* jurisdiction is not implicated.

14

## IV. CONCLUSION

In accordance with the foregoing, the Court shall grant the Motion to Dismiss filed by the Commonwealth Defendants and dismiss the Plaintiffs' Complaint.  Having found the $40,000 was in *custodia legis* as a result of the March 2, 2006 order of the Middlesex Superior Court, those funds are not property of the Debtors' bankruptcy estate and this Court must abstain from adjudicating ownership and disposition of the funds.  The Court shall deny the Debtor's Motion to Dismiss as moot in view of the decision to abstain.  In this regard, the Court observes that the Debtor has received a discharge pursuant to 11 U.S.C. § 727(a), and the Court is not expressing any opinion as to whether any actions taken by the Plaintiffs would or would not violate the discharge injunction imposed by 11 U.S.C. § 524 (a)[9] or whether the sole remedy available may be one for contempt for violating an order of the Middlesex Superior Court.

By the Court,

*Joan N. Feeney*

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 20, 2011

---

[9] Because the funds were to be held in *custodia legis*, to the extent the Debtor failed to abide by an order of the Middlesex Superior Court, she may be in contempt of that court or liable for fraud on the court.  This Court, however, makes no determination with respect to any of those issues.

15